**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE BERNARD BRATCHER, JR.,<br><br>Defendant. | CR 25-43-GF-WWM<br><br>ORDER REJECTING CONDITIONAL PLEA AGREEMENT AND ESTABLISHING DEADLINE FOR DEFENDANT TO PROVIDE NOTICE ON ELECTION TO WITHDRAW GUILTY PLEA OR PROCEED WITH SENTENCING |

Defendant George Bratcher ("Mr. Bratcher") and the United States entered into a conditional plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (Doc. 37). Under the conditional plea agreement, Mr. Bratcher and the United States agreed that the Court could not impose a custodial sentence. *Id.* at 6 ("a sentence of imprisonment of time served is an appropriate resolution of this case"). The undersigned accepted Magistrate Judge Johnston's recommendation to allow entry of Mr. Bratcher's guilty plea to being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), but the question of whether the plea agreement should be accepted has yet to be resolved. (Docs. 48 and 58).

The Court convened a sentencing hearing in this case on August 7th. (Docs. 56 and 58). At the hearing, the Court provided notice of its initial views of

the sentence dictated by the plea agreement given the facts of the case, the findings in the Presentence Report ("PSR"), and Defendant's criminal history. The Court invited the parties to argue why the plea agreement should be accepted. Both sides described the inherent risk and cost of conducting a jury trial. The United States identified two things: a potential difficulty with its proof that would make trial risky and the growing uncertainty surrounding the legal viability of federal firearms laws and prosecutions under them.[1] Mr. Bratcher contended that a three-year term of supervised release would constitute sufficient punishment due to the imposition of a federal felon status and the risk of revocation.

After hearing argument from counsel, the Court reserved the question of whether to accept the conditional plea agreement. In the meantime, the Probation Officer has amended the PSR, which now includes an acceptance of responsibility letter from Mr. Bratcher, and the Court has obtained additional information from state court records regarding the facts at issue in this case and Mr. Bratcher's conduct while on state probation, including his employment status.[2] Earlier today,

---

[1] The Court does not agree that the federal law prohibiting possession of firearms by felons is vulnerable to attack. The prohibition on felons possessing firearms has not been disturbed by recent Supreme Court precedent. *See District of Columbia v. Heller*, 554 U.S. 570, 626-27 n.26 (2008) (describing the "longstanding prohibitions on the possession of firearms by felons" as "presumptively lawful"); *United States v. Hemani*, 146 S.Ct. 1677, 1692 n. 6 (2026) ("nothing in our opinion should be taken to cast doubt on [§ 922(g)(1)]") (quoting *Heller*, 554 U.S. at 626); *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (reiterating the presumptive lawfulness of prohibitions on felons possessing firearms) (citing *Heller*, 554 U.S. at 627 n.26).

[2] The Court takes judicial notice of documents filed in the state court docket in *State v. Bratcher*, Cause No. BDC-23-280 (Mont. 8th Jud. Dist., Cascade County), in 2024 and 2025.

on the record, the Court rejected the plea agreement. The basis for the decision is set forth herein.

## I. Procedural Posture

The Grand Jury indicted Mr. Bratcher on April 18, 2025, for being a felon in possession of a firearm and ammunition on December 24, 2024. (Doc. 1). Mr. Bratcher was arrested on May 14, 2025. He was in detention on the federal case for 14 days, but Judge Johnston released him on May 27, 2025, with conditions to abide by. (Doc. 16). In the Offer of Proof filed by the government in advance of the change of plea hearing, the prosecutor asserted that a search of Mr. Bratcher's residence by state probation officers pursuant to conditions imposed by a state district court judge for his suspended sentence in 2023 yielded a loaded handgun "on the left side of the bed inside an open purse," drug paraphernalia, and "white residue that tested presumptive[ly] positive for cocaine." (Doc. 40 at 4). Of note, the government reported that after the seizure of the pistol and administration of his *Miranda* rights, Mr. Bratcher disclosed to officers that "everything was his." *Id.*

### A. Facts Relevant to the Decision on Whether to Accept the Plea Agreement

Nearly half his life ago, in 2007, the State of Maryland convicted Mr. Bratcher for drug distribution. PSR at ¶ 35. Many years passed before he accumulated any additional criminal history, but he has struggled to remain law-

abiding since 2020. He has been convicted on four occasions for driving under the influence in 2021 and 2023, the last of which constituted a felony. PSR at ¶¶ 37-39. More noteworthy is the fact that Mr. Bratcher had a run of non-compliant conduct in late 2024 and 2025 while on probation for his 2023 state court conviction, starting with the offense conduct at issue in this case.

Separately from the charges in this case, in 2025, the State of Montana sought to revoke his suspended sentence and terminate Mr. Bratcher's placement in a drug treatment court. On January 9, 2025, Montana Probation and Parole ("P&P") filed a Report of Violation ("Report") to serve as the basis for terminating his treatment court placement. Four separate violations were asserted with documented factual bases, including:

> Count I: Court/Parole Condition: Illegal Drug Use. . . .
>
> On December 24, 2024, the Offender was found in possession of drug paraphernalia to include a beaker with white residence, a scale with white residue, a snort tube with white residue, and small clear baggies commonly known to package drugs. All items with white residue presumptively tested positive for cocaine per GFPD Officer Dimas Patina. The items were sent off for confirmation.
>
> Count II: Court/Parole Condition: No Weapons. . . .
>
> On December 24, 2024, Probation and Parole Officer Anthony Spencer found a loaded 9mm handgun on the offender's nightstand.

> Count III: Court/Parole Condition: Laws and Conduct. I shall comply with all . . . federal laws . . . .
>
> On December 24, 2024, the Offender was charged with Criminal Possession of Dangerous Paraphernalia, a misdemeanor. The case was turned over [to] the ATF for further investigation regarding the firearm.
>
> Count IV: Court/Parole Condition: Chemical Dependency Education:
>
> I will complete a chemical dependency education course. § 61-8-732, MCA. Offender was ordered to enter into and complete the Adult Treatment Court in Cascade County. . . .
>
> On December 24, 2024, the Offender violated the standard rules of the Adult Drug Treatment Court and is pending termination at this time.

(Report at 2).

On January 17, 2025, the Cascade County Attorney filed a Petition for Revocation of Mr. Bratcher's suspended sentence. This filing was followed by a Petition to Terminate his treatment court placement. The Report served as foundational support for both petitions. In the section of the document entitled "Adjustment to Supervision," Probation Officer Romeo stated:

> Disappointing. The opportunity to be in the Adult Drug Treatment Court program is not to be taken lightly. Offender Bratcher has a history of violence and distribution from his time in Maryland and was still graciously given the opportunity. He has had minimal violations throughout the program but has not learned from his past. He continues to put community members, officers, and himself at risk with firearms and drugs. He continues to clearly show [a] criminal mindset and minimization of his actions. His adjustment to supervision can only be described as poor.

(Report at 3). On March 10, 2025, State District Judge Elizabeth Best held a hearing in which Mr. Bratcher could have contested the allegations in the Report,

but his counsel advised that he would not be contesting the existence of any of the four violations. By admitting them, he agreed that the firearm seized by the officers during the search was on his nightstand.[3] Judge Best revoked his suspended sentence, committed him to the Montana Department of Corrections for four years, and suspended the sentence contingent upon Mr. Bratcher's successful completion of treatment court.

Mr. Bratcher was detained for 74 days on a treatment court revocation between May 29, 2025, and August 11, 2025. While he was on pretrial release in the federal case, the State initiated another revocation proceeding on August 14, 2025.[4] In the P&P Report of Violation ("2nd Report"), P&P Officer Vogt alleged two violations: (1) failure to comply with the condition to obtain chemical dependency education and (2) failure to comply with the condition to be law abiding and engage in appropriate conduct. (2nd Report at 4). The facts supporting the allegations included Judge Best's termination of Mr. Bratcher as a participant in the Adult Drug Treatment Court and a recorded statement from him while in jail that he should "choke the Treatment Court Judge out." Given Mr. Bratcher's conduct, Officer Vogt recommended that "behavioral modifications should be implemented at the Montana State Prison."

[3] He made these admissions before the grand jury returned the Indictment in this case.

[4] Before the filing of the Petition, Judge Best terminated him from the treatment court on August 11, 2025.

Based upon the August 14th petition, Judge Best revoked Bratcher's suspended sentence on November 3, 2025, and imposed an additional two years for him to obtain chemical dependency treatment with qualified providers. As with the revocation in March, Mr. Bratcher did not receive a prison sentence in this proceeding.

In addition to his interactions with the criminal justice system, Mr. Bratcher has also struggled to maintain employment during this period. *See generally,* PSR at ¶¶ 65-67. He worked for ADT for 57 months as a welder at different times in 2019 through 2024. *Id.* ADT terminated him on three separate occasions for absenteeism, and he is not eligible to be rehired. *Id.* State court orders in 2024 and 2025 required Mr. Bratcher to maintain or actively seek employment, yet he appears to have failed to do so.

## II. Analysis

Whether the conditional plea agreement should be accepted turns on weighing the advisory guideline range and the 18 U.S.C. § 3553(a) factors to determine if the purposes of sentencing are met[5] without inclusion of a custodial term. The judges in the United States District Court for the District of Montana

[5] Section 3553(a)(3) of Title 18 of the U.S. Code also requires district judges to consider the types of punishment that could be imposed, but the maximum term of custody is not entitled to much weight here given the Defendant's crime, the nature and circumstances surrounding it, and his relatively limited criminal history.

have fairly limited experience with plea agreements made pursuant to Rule 11(c)(1)(C). As disclosed at the sentencing hearing, I am not predisposed against conditional plea agreements. The Criminal Rules allow for the parties to reach a resolution that will bind the Court if it accepts the plea agreement, but the Court's role is not diminished in determining the adequacy of the contemplated sentence merely because the parties have come up with a settlement. Rejection of the parties' proposed resolution here should not be interpreted as hostility to conditional plea agreements in general.

The parties' perspectives on the right outcome in this case are somewhat perplexing. The United States seems to lack confidence in its ability to obtain a conviction, and said as much at the hearing on August 7th.[6] However, it appears to possess two strong facts -- the location of the gun on Mr. Bratcher's nightstand,[7] as noted by the P&P Officer who participated in the search, and the Defendant's own statements at the time of the seizure. It also gives an approving nod to Mr. Bratcher's history and potential for success on supervised release, which is

---

[6] The government's sentencing memorandum cites the PSR for the proposition that the gun was in an open purse, which is inconsistent with the record established in state court. (Doc. 54 at 2). This interpretation led to the government's conclusion that "the defendant had knowledge and the intention to control the firearm, but it seems the gun was most strongly linked to his wife." (Doc. 54 at 4).

[7] This version of the facts, which Mr. Bratcher did not contest before Judge Best, is inconsistent with the government's representations in its sentencing memorandum ("In the bedroom, officers observed a pistol inside an open purse on the bed") (Doc. 54 at 2).

belied by his performance on probation in 2025. The government seems to be focusing on his record between the conviction in 2023 through Christmas Eve in 2024. Even though Judge Best terminated him from Treatment Court more than a year ago, the government credits Mr. Bratcher's participation "in state treatment court during the time the events in this case took place." *See e.g.*, PSR at ¶ 39. For his part, Mr. Bratcher entered a guilty plea and is willing to be convicted for illegal possession of a firearm if the consequences are limited to spending three years on supervised release. Even though the United States expresses skepticism about its ability to obtain a conviction, Mr. Bratcher does not want to go to trial. Instead of invoking his constitutional trial rights, he is willing to be a federal felon should he not be incarcerated.

The arguments made by Mr. Bratcher to justify a time-served sentence seem overstated given the contents of the PSR and the state court docket. In particular, I find little support for the proposition that he "has shown that he can be law abiding" and "is committed to improving his life, making better choices." (Doc. 53 at 2 and 12). If Mr. Bratcher's criminal history was limited to the 2007 conviction, he would have a stronger argument for a sentence not involving a custodial term. A non-custodial sentence is unlikely to achieve behavioral modification and, in this respect, would be no more impactful than if the United States abandoned the case. His additional convictions in this decade, coupled with

his inability to comply with the conditions imposed as part of the Montana sentences, suggests that incarceration is necessary to change his course of conduct. As his P&P Officer recommended, "behavioral modifications" should be implemented in a correctional setting. (2nd Report at 3).

The United States has also asserted that "Bratcher's crime was serious enough to warrant a federal felony conviction," but evidently the crime and his history is not serious enough to warrant any imprisonment from the prosecution's perspective. (Doc. 54 at 3). The Court is cognizant of the on-going dialogue regarding the pervasiveness of plea bargaining and the effect it has had on the administration of justice in federal criminal cases, including the concomitant reduction of trials over time. *See Hunter v. United* States, 146 S.Ct. 1702, 1715-18 (2026) (Gorsuch, J., joined by Sotomayor & Jackson, JJ., concurring). Although the critique of the status quo does not seem well-founded given the case-specific observations of the undersigned in other sentencings, it may have salience in this case. If the government does not believe that a jury will find the Defendant guilty of violating 18 U.S.C. § 922(g), it has the authority to obtain dismissal of the Indictment. *See* Fed. R. Crim. P. 48(a) and 18 U.S.C. § 3367. On the other hand, the Court should not ratify a plea agreement that dictates a sentence which would fail to reflect the seriousness of the offense, does not account for Mr. Bratcher's recidivism, and fails to promote respect for the law. *See* 18 U.S.C. § 3553(a).

Mr. Bratcher has been convicted of two felonies as an adult. He has also demonstrated an inability to comply with previous conditions imposed, as shown by his suspended sentence for his second felony and a fourth conviction in the recent past for driving under the influence. By pleading guilty and receiving a three-level reduction in the calculation of his final offense level, Mr. Bratcher's advisory guideline range is 12-18 months, which would be 21-27 months if convicted at trial after requiring the United States to prove its case. Based upon Mr. Bratcher's prior felony convictions, the United States has asserted that he "has shown himself to be someone who deviates from legal norms and who therefore must be held accountable." (Doc. 54 at 4). For that reason, but based upon a different rationale than the one advocated by the United States, I am compelled to reject the conditional plea agreement. It fails to hold Mr. Bratcher accountable and does not adequately balance the factors that district judges must consider at sentencing.

## III. Conclusion

Having concluded that the plea agreement fails to adequately reflect the history and characteristics of Mr. Bratcher and the need to provide deterrence and promote respect for the law, the Court rejects the plea agreement. Having rejected the plea agreement, the Court will not be bound by the sentencing recommendations of the parties and may, therefore, impose a sentence less

favorable to Defendant than contemplated under the plea agreement. In light of this decision, Mr. Bratcher shall be given an opportunity to withdraw his guilty plea and have the Court establish a trial date. Accordingly,

**IT IS ORDERED** that the parties shall disclose to the Court no later than September 18, 2026, whether Mr. Bratcher intends to maintain his plea of guilty and proceed with sentencing or have the Court establish a trial date.

The Clerk of Court is directed to notify the parties of the making of this Order.

Dated this 14th day of September, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE